# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| AJAX PHILADELPHIA, INC., individually and on behalf of all others similarly situated, | *DOCUMENT ELECTRONICALLY FILED* |
| Plaintiff, | |
| v. | CASE NO. |
| SHARP CORPORATION, SHARP ELECTRONICS CORPORATION, SAMSUNG ELECTRONICS CO., LTD., SAMSUNG SEMICONDUCTOR, INC., LG.PHILIPS LCD CO., LTD., LG.PHILIPS LCD AMERICA, INC., IPS ALPHA TECHNOLOGY, LTD., TOSHIBA CORPORATION, TOSHIBA MATSUSHITA DISPLAY TECHNOLOGY CO., LTD., MATSUSHITA ELECTRIC INDUSTRIAL CO., PANASONIC CORPORATION OF NORTH AMERICA, HITACHI, LTD., HITACHI DISPLAYS, LTD., HITACHI AMERICA, LTD., HITACHI ELECTRONIC DEVICES (USA), INC., SANYO EPSON IMAGING DEVICES CORPORATION, AU OPTRONICS CORPORATION, AU OPTRONICS CORPORATION AMERICA, CHI MEI CORPORATION, CHI MEI OPTOELECTRONICS CORPORATION, CHI MEI OPTOELECTRONICS USA, INC., NEC LCD TECHNOLOGIES, LTD., NEC ELECTRONICS AMERICA, INC., NEC CORPORATION, INTERNATIONAL DISPLAY TECHNOLOGY CO., LTD., INTERNATIONAL DISPLAY TECHNOLOGY USA, INC., NEXGEN MEDIATECH USA, INC., and HANNSTAR DISPLAY CORPORATION, | CLASS ACTION<br><br>JURY TRIAL DEMANDED<br><br>**CLASS ACTION COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF** |
| Defendants. | |

Plaintiff AJAX Philadelphia, Inc., individually and on behalf of all others similarly situated, brings this action under the federal antitrust laws, Section 1 of the Sherman Antitrust Act of 1890, 15 U.S.C. § 1 ("Sherman Act") and Section 4 of the Clayton Antitrust Act of 1914, 15 U.S.C. § 15 ("Clayton Act"). The allegations herein are made on information and belief, except for those allegations specific to Plaintiff which are made with personal knowledge.

## NATURE OF THE ACTION

1. This action arises out of a conspiracy among Defendants and their co-conspirators, which had the purpose and effect of fixing, raising, maintaining, and stabilizing artificially the price at which Thin Film Transistor Liquid Crystal Display ("TFT-LCD") was sold in the United States. This action is brought on behalf of a class ("Class") consisting of all persons and entities that purchased TFT-LCD directly from the named Defendants in the United States during the period from approximately January 1, 2000 through the present (the "Class Period"). As a result of Defendants' unlawful conduct, Plaintiff and the other members of the Class paid artificially inflated prices for TFT-LCD during the Class Period.

2. Defendants are the leading manufacturers of TFT-LCD, which is utilized in the manufacture of televisions, computers, monitors, mobile phones, personal digital assistants ("PDAs") and other electronic devices, and control the majority of the TFT-LCD industry which annually generates worldwide revenues in excess of $69 billion. As a result of Defendants' unlawful conduct, Plaintiff and the other members of the Class paid artificially inflated prices for TFT-LCD during the Class Period. Such prices exceeded the amount they would have paid if the price for TFT-LCD had been determined by a competitive market.

## JURISDICTION AND VENUE

3.  This action arises under Section 1 of the Sherman Act and Section 4 of the Clayton Act.

4.  Jurisdiction of this Court is founded on Sections 4 and 16 of the Clayton Act, 15 U.S.C. § 15, 26 for violations of Section 1 of the Sherman Act, 15 U.S.C. § 1, and on 28 U.S.C. §§ 1331, 1337.

5.  Venue as to Defendants is proper in this district pursuant to 15 U.S.C. §§ 15(a), 22, and 28 U.S.C. § 1391(b), (c), in that more than one Defendant resides in this judicial district, is licensed to do business and/or is doing business in this judicial district. The interstate trade and commerce described herein has been carried out, in part, within this district.

## PARTIES

6.  Plaintiff AJAX Philadelphia Inc. ("AJAX") is a corporation organized and existing under the laws of the Commonwealth of Pennsylvania and has its principal place of business at 400 Chester Pike, Ridley Park, Pennsylvania 19078. During the Class Period, AJAX purchased TFT-LCD from one or more of the Defendants.

7.  Defendant Samsung Electronics Co., Ltd. ("Samsung Electronics"), a Korean corporation, maintains its executive offices at Samsung Main Building, 250-2 ga, taepyung-ro chung-gu, Seoul, Korea. Samsung Electronics controls an integrated global enterprise comprised of itself and other entities including Defendants Samsung Semiconductor, Inc. and Samsung Electronics America, Inc. During the Class Period, Samsung Electronics manufactured, sold and/or distributed TFT-LCD throughout the world, including the United States.

8.  Defendant Samsung Semiconductor, Inc. ("Samsung Semiconductor") is a

California corporation with its principal place of business located at 3655 North First Street, San Jose, California 95134. Samsung Semiconductor is a wholly owned and controlled subsidiary of Defendant Samsung Electronics. During the Class Period, Samsung Semiconductor manufactured, sold and/or distributed TFT-LCD throughout the United States.

9. Defendants Samsung Electronics and Samsung Semiconductor are referred to individually and collectively herein as "Samsung."

10. Defendant LG.Philips LCD Co., Ltd. ("LG.Philips Korea") is a Korean entity with its principal place of business located at 20 Yeouido-dong, Yeongdeungeungpo-gu, Seoul 150-72 1, Korea. LG.Philips Korea is a joint venture created in 1999 by Royal Philips Electronics NV and LG Electronics. LG.Philips Korea controls an integrated global enterprise comprised of itself and other entities including Defendant LG. Philips LCD America, Inc. LG.Philips Korea maintains offices in San Jose, California. During the Class Period, LG. Philips manufactured, sold and/or distributed TFT-LCD throughout the United States.

11. Defendant LG.Philips LCD America, Inc. ("LG.Philips America") is an entity organized under the laws of California with its principal place of business located at 150 East Brokaw Rd., San Jose, CA 95112. During the Class Period, LG.Philips America manufactured, sold and/or distributed TFT-LCD throughout the United States.

12. Defendants LG.Philips Korea and LG.Philips America are referred to individually and collectively herein as "LG.Philips."

13. Defendant Sharp Corporation ("Sharp Corp.") is a business entity organized under the laws of Japan, with its principal place of business at 22-22 Nagaike-cho, Abeno-ku, Osaka 545-8522, Japan. Sharp Corp. controls an integrated global enterprise comprised of itself and

4

other entities including Defendant Sharp Electronics Corporation. During the Class Period, Sharp Corp. manufactured, sold and/or distributed TFT-LCD throughout the United States.

14. Defendant Sharp Electronics Corporation ("Sharp Electronics") is a wholly owned and controlled subsidiary of Sharp Corp., with its principal place of business located in this district at Sharp Plaza, Mahwah, New Jersey, 07430. During the Class Period, Sharp Electronics manufactured, sold and/or distributed TFT-LCD throughout the United States.

15. Sharp Corp. and Sharp Electronics are referred to individually and collectively herein as "Sharp."

16. Defendant IPS Alpha Technology, Ltd. ("IPS") is a business entity organized under the laws of Japan, with its principal place of business at 3732, Hayano, Mobara, 297-0-0037, Japan. IPS is a joint venture formed by Defendant Hitachi Ltd., Defendant Toshiba Corporation, and Defendant Matsushita Electric Industrial Co., Ltd. During the Class Period, IPS manufactured, sold and/or distributed TFT-LCD throughout the United States.

17. Defendant Toshiba Corporation ("Toshiba") is a business entity organized under the laws of Japan, with its principal place of business at 1-1, Shibaura 1-chome, Minato-ku, Tokyo 105-8001, Japan. During the Class Period, Toshiba manufactured, sold and/or distributed TFT-LCD throughout the United States.

18. Defendant Toshiba Matsushita Display Technology Co., Ltd. ("Toshiba-Matsushita") is a business entity organized under the laws of Japan with its principal place of business located at Rivage Shinagawa, 1-8, Konan 4-chome, Minato-ku, Toykyo 108-0075, Japan. Toshiba-Matsushita is a joint venture between Toshiba and Defendant Matsushita Electric Industrial Co., Ltd. During the Class Period, Toshiba Matsushita Display Technology Co., Ltd.,

5

manufactured, sold and/or distributed TFT-LCD throughout the United States.

19. Defendant Matsushita Electric Industrial Co. ("Matsushita Electric") is a business entity organized under the laws of Japan with its principal place of business at 1006 Oaza Kadoma, Kadoma City, Osaka 571-8501, Japan. Matsushita Electric controls an integrated global enterprise comprised of itself and other entities including defendant Panasonic Corporation of North America. During the Class Period, Matsushita Electric manufactured, sold and/or distributed TFT-LCD throughout the United States.

20. Defendant Panasonic Corporation of North America, formerly known as Matsushita Electric Corp. of America ("Panasonic"), oversees the North American business operations of Matsushita Electric. Panasonic is a Delaware corporation with its principal place of business located in this district at 1 Panasonic Way, Secaucus, New Jersey 07094. During the Class Period, Panasonic manufactured, sold and/or distributed TFT-LCD throughout the United States.

21. Matsushita Electric and Panasonic are referred to individually and collectively as "Matsushita."

22. Defendant Hitachi, Ltd. ("Hitachi Ltd.") is a business entity organized under the laws of Japan, with its principal place of business at 4-6 Kanda-Surugadai Chiyoda-ku, Tokyo, 101-8010, Japan. Hitachi, Ltd. controls an integrated global enterprise comprised of itself and other entities including Defendants Hitachi Displays, Ltd., Hitachi America, Ltd. and Hitachi Electronic Devices (USA), Inc. During the Class Period, Hitachi Ltd. manufactured, sold and/or distributed TFT-LCD throughout the United States.

23. Defendant Hitachi Displays, Ltd. ("Hitachi Displays") is a business entity

organized under the laws of Japan, with its principal place of business located at AKS Bldg. 5F, 6-2 Kanda Neribeicho 3, Chiyoda-ku, Tokyo, 101-0022, Japan. During the Class Period, Hitachi Displays, Ltd. manufactured, sold and/or distributed TFT-LCD throughout the United States.

24. Defendant Hitachi America, Ltd. ("Hitachi America") is a wholly owned and controlled subsidiary of Defendant Hitachi, Ltd. Hitachi America, Ltd. is a business entity organized under the laws of New York, with its principal place of business at 50 Prospect Avenue, Tarrytown, New York 10591. During the Class Period, Hitachi America, Ltd. manufactured, sold and/or distributed TFT-LCD throughout the United States.

25. Defendant Hitachi Electronic Devices (USA), Inc. ("Hitachi Electronic") is a wholly owned and controlled subsidiary of Defendant Hitachi Ltd., and is a business entity with its principal place of business located at 575 Mauldin Road, Greenville, South Carolina 29607. During the Class Period, Hitachi Electronic manufactured, sold and/or distributed TFT-LCD throughout the United States.

26. Defendants Hitachi, Ltd., Hitachi Displays, Hitachi America and Hitachi Electronic are referred to individually and collectively herein as "Hitachi."

27. Defendant Sanyo Epson Imaging Devices Corporation ("Sanyo Epson") is a joint venture of Seiko Epson Corporation and Sanyo Electric Co., Ltd. It began operations on October 1, 2004. Defendant Sanyo Epson's principal place of business is located at World Trade Center Building 15f, 2-4-1 Hamamatsu-cho, Minto-ku, Tokyo Japan. During the Class Period, Sanyo Epson manufactured, sold and/or distributed TFT-LCD throughout the United States.

28. Defendant NEC Corporation ("NEC Corp.") is a business entity organized under the laws of Japan with its principal place of business located at 7-1, Shiba 5-chome, Minato-ku,

7

Tokyo 108-8001 Japan. NEC Corp. controls an integrated global enterprise comprised of itself and other entities including Defendants NEC LCD Technologies, Ltd. and NEC Electronics America, Inc. During the Class Period, NEC Corporation manufactured, sold and/or distributed TFT-LCD throughout the United States.

29. Defendant NEC LCD Technologies, Ltd. ("NEC LCD") is a wholly owned and controlled subsidiary of Defendant NEC Corporation, and is an entity organized under the laws of Japan with its principal place of business located at 1753 Shimonumabe, Nakahara-Ku, Kawasaki, Kanagawa 211-8666, Japan. During the class Period, NEC LCD Technologies, Ltd. manufactured, sold and/or distributed TFT-LCD throughout the United States.

30. Defendant NEC Electronics America, Inc. ("NEC America") is a wholly owned and controlled subsidiary of NEC Electronics Corporation, with its principal place of business at 2880 Scott Boulevard, Santa Clara, California and its manufacturing plant in Roseville, California. During the Class Period, NEC Electronics manufactured, sold and/or distributed TFT-LCD throughout the United States.

31. Defendants NEC Corp., NEC LCD and NEC America are referred to individually and collectively herein as "NEC."

32. Defendant Chi Mei Corporation is located at No. 11-2, Jen Te 4 St., Jen Te Village, Jen Te, Tainan 717, Taiwan, R.O.C. Chi Mei Corporation owns Chi Mei Optoelectronics Corporation which claims to be the world's largest and most sophisticated TFT-LCD manufacturer.

33. Defendant Chi Mei Optoelectronics Corporation ("Chi Mei Optoelectronics") is a leading manufacturer of TFT-LCD and has its global headquarters at No. 3, Sec. 1, Huanshi Rd.,

Southern Taiwan Science Park, Sinshih Township, Tainan County, 74147 Taiwan R.O.C. Chi Mei Optoelectronics controls an integrated global enterprise comprised of itself and other entities including Defendants Chi Mei Optoelectronics USA, Inc., International Display Technology Co., Ltd., International Display Technology USA, Inc. and Nexgen Mediatech USA Inc. During the Class Period, Chi Mei Optoelectronics manufactured, sold and/or distributed TFT-LCD throughout the United States.

34. Defendant Chi Mei Optoelectronics USA, Inc. ("Chi Mei USA") is a wholly owned and controlled subsidiary of Chi Mei Optoelectronics Corporation and has its corporate headquarters at 101 Metro Drive Suite 510, San Jose, California. During the Class Period, Chi Mei Optoelectronics USA, Inc. manufactured, sold and/or distributed TFT-LCD throughout the United States.

35. Defendant International Display Technology Co., Ltd. ("International Display") is an entity organized under the laws of Japan with its principal place of business located at Nansei Yaesu Bldg. 3F, 2-2-10 Yaesu, Chuo-Ku, Tokyo 104-0028, Japan. International Display Technology is a wholly owned subsidiary of Defendant Chi Mei Optoelectronics. During the Class Period, International Display manufactured, sold, and/or distributed TFT-LCD throughout the United States.

36. Defendant International Display Technology USA, Inc. ("International Display USA") is a corporation with its principal place of business at 101 Metro Drive Suite 510, San Jose, California. Defendant International Display USA is a subsidiary of Defendant Chi Mei Optoelectronics. During the Class Period, International Display USA manufactured, sold, and/or distributed TFT-LCD during the Class Period throughout the United States.

9

37. Defendant Nexgen Mediatech USA, Inc. ("Nexgen") is a wholly owned subsidiary of Chi Mei Optoelectronics, and/or its affiliates with its principal place of business at 14500 Proctor Ave., City of Industry, CA 91746. Nexgen sells TFT-LCD throughout the United States.

38. Chi Mei Corporation, Chi Mei Optoelectronics, Chi Mei USA, International Display, International Display USA and Nexgen Mediatech USA Inc. are referred to individually and collectively herein as "Chi Mei."

39. Defendant AU Optronics Corporation ("AU Taiwan") is Taiwan's largest manufacturer of TFT-LCD and has its corporate headquarters at No. 1, Li-Hsin Rd. 2, Hsinchu Science Park, Hsinchu 30078, Taiwan, R.O.C. AU Taiwan controls an integrated global enterprise comprised of itself and other entities including Defendant AU Optronics Corporation America. During the Class Period, AU Taiwan manufactured, sold and/or distributed TFT-LCD throughout the United States.

40. Defendant AU Optronics Corporation America ("AU America") is a wholly owned and controlled subsidiary of Defendant AU Optronics and has its corporate headquarters at 9720 Cypesswood Drive, Suite 241, Houston, Texas. AU America has a facility located in San Diego California. During the Class Period, AU America manufactured, sold and/or distributed TFT-LCD throughout the United States.

41. AU Taiwan and AU America are referred to individually and collectively herein as "AU Optronics."

42. Defendant HannStar Display Corporation ("HannStar") is a leading manufacturer of TFT-LCD Products and has its headquarters at No. 480, Rueiguang Road, 12

10

Floor, Neihu chiu, Taipei 114, Taiwan, R.O.C. During the Class Period, HannStar manufactured, sold and/or distributed TFT-LCD throughout the United States.

43. On information and belief, other partnerships, corporations, or other business entities, unknown to Plaintiff, are co-conspirators with Defendants in their unlawful restraint of trade. These other co-conspirators have facilitated, adhered to, participated in, and/or communicated with others regarding the conspiracy.

44. The conduct alleged herein was Defendants' conduct or actions ordered or done by defendants' officers, agents, employees, or representatives, while engaged in the usual management of defendants' business.

## CLASS ACTION ALLEGATIONS

45. Plaintiff brings this action both on behalf of itself, and as a class action pursuant to Federal Rules of Civil Procedure, Rule 23(a) and (b)(3), on behalf of the following class (the "Class").

> All individuals and entities who, during the period from approximately January 1, 2000 through the present (the "Class Period"), purchased Thin Film Transistor Liquid Crystal Display (TFT-LCD) in the United States directly from the Defendants or their subsidiaries. Excluded from the Class are Defendants and their parents, subsidiaries, affiliates, all governmental entities, and co-conspirators.

46. The Class is so numerous that joinder of all members is impracticable. Due to the nature of the trade and commerce involved, Plaintiff believes that the members of the Class are geographically dispersed throughout the United States, and that joinder of all Class members would be impracticable. While the exact number of Class members is unknown to Plaintiff at this time, Plaintiff believes that there are, at least, thousands of members of the Class and that their identities can be learned from Defendants' books and records.

47. Plaintiff's claims are typical of the claims of the other members of the Class. Plaintiff and the members of the Class purchased TFT-LCD at artificially maintained, non-competitive prices established by the actions of Defendants and their unnamed co-conspirators in connection with the restraint of trade alleged herein. Plaintiff and the members of the Class have all sustained damage in that they paid inflated prices for TFT-LCD due to Defendants' conduct in violation of federal law as complained of herein.

48. Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class action and antitrust litigation.

49. Defendants have acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the Class as a whole.

50. Common questions of law and fact exist as to all members of the Class and predominate over any questions affecting solely individual members of the Class. Among the questions of law and fact common to the Class are:

    a. Whether Defendants engaged in a contract, combination or conspiracy among themselves to fix, maintain or stabilize the price of TFT-LCD sold in the United States;

    b. Whether the conduct of Defendants caused the prices of TFT-LCD to be artificially inflated;

    c. Whether Defendants' conduct caused injury to the members of the Class and, if so, the proper measure of damages; and

    d. Whether Defendants undertook actions to conceal the unlawful contract, combination or conspiracy described therein.

51. A class action is superior to other available methods for the fair and efficient adjudication of this controversy since joinder of all Class members is impracticable. The

prosecution of separate actions by individual members of the Class would impose heavy burdens upon the courts and Defendants, and would create a risk of inconsistent or varying adjudications of the questions of law and fact common to the Class. A class action would achieve substantial economies of time, effort and expense, and would assure uniformity of decision as to persons similarly situated without sacrificing procedural fairness.

## INTERSTATE TRADE AND COMMERCE

52. Throughout the Class Period, Defendants sold and shipped substantial quantities of TFT-LCD in a continuous and uninterrupted flow of transactions in interstate commerce throughout the United States, including in this District.

53. The unlawful activities of Defendants that are subject of this Complaint were within the flow of, and have had a direct and substantial effect on, interstate trade and commerce.

## FACTS

**The Product and the Market**

54. TFT-LCD, Thin Film Transistor-Liquid Crystal Display, is a type of Liquid Crystal Display ("LCD"). The TFT technology is used to improve the image quality of the LCDs and produces sharp, clear images.

55. TFT-LCDs are active matrix displays consisting of pixels laid out in rows and columns. Each pixel is a tiny capacitor with a transparent ITO layer in front, insulating liquid crystal in the middle, and another transparent layer in the back. Each pixel has its own transistor switch.

56. TFT-LCDs are used in flat panel televisions, monitors, projectors, laptop computer screens, cell phones and handheld digital products such as music devices, cameras and

13

PDAs.

57. The TFT-LCD market is characterized by high manufacturing and technological barriers to entry, particularly due to the cost of building TFT-LCD manufacturing facilities.

58. The market is concentrated, with the three largest manufacturers (at least as of April 2006) – LG.Philips, Samsung, and AU Optronics controlling approximately 53% of the market. It has been estimated that the market will grow to $42 billion by 2007, up from $24 billion in 2003.

**Defendants' Illegal Conduct**

59. Commencing on or about January 1, 2000, the exact date being unknown, defendants entered into a conspiracy, which had the purpose and effect of fixing, raising, maintaining and stabilizing the price of TFT-LCD at artificially inflated levels.

60. On December 11, 2006, Defendant LG.Philips acknowledged that it was being investigated by authorities in the U.S., Korea and Japan for alleged anticompetitive practices in the TFT-LCD market. LG. Philips also disclosed that officials from the Korean Fair Trade Commission ("KFTC") searched its Seoul, Korea headquarters on December 8, 2006; that its offices in Japan had also received a notice from the Japanese Fair Trade Commission ("JFTC"); and that the United States Department of Justice ("DOJ") had issued a subpoena to its office in the U.S., located in San Jose, California.

61. On December 11, 2006, Defendant Samsung acknowledged that it had received subpoenas from the KFTC, JFTC, and DOJ regarding the LCD market.

62. Since that date, more Defendants, such as AU Optronics, Chi Mei, Sharp, Toshiba-Matsushita, NEC LCD, Hitachi, IPS, and Matsushita Electric, announced that they were

being investigated by governmental authorities regarding the LCD market.

## ALLEGATION OF ANTITRUST
## INJURY TO PLAINTIFF AND THE CLASS

63. On or about January 1, 2000, the exact date being unknown to Plaintiff, Defendants entered into a continuing contract, combination or conspiracy to unreasonably restrain trade and commerce in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1. These activities included the following:

    (a) Participating in meetings and conversations to discuss the price of TFT-LCDs sold in the United States;

    (b) Agreeing during those meetings and conversations to charge prices at specified levels and otherwise to fix, increase, stabilize and/or maintain prices of TFT-LCDs sold in the United States;

    (c) Selling TFT-LCDs at the agreed upon prices; and

    (d) Selling TFT-LCDs to various customers throughout the United States at artificially inflated prices.

64. The conspiracy alleged herein had and is having the following effects, among others:

    (a) Prices charged to plaintiff and the Class for TFT-LCD have been raised, fixed, maintained or stabilized at artificially inflated, non-competitive levels;

    (b) Plaintiff and the Class have been deprived of the benefits of free, open and unrestricted competition in the market for TFT-LCD; and

    (c) Competition in establishing the prices paid in the United States and worldwide for TFT-LCD has been unlawfully restrained, suppressed and eliminated.

65. By reason of the violations of Section 1 of the Sherman Act and Section 4 of the Clayton Act, plaintiff and the members of the Class have sustained injury. As a direct result of Defendants' conduct, the injury sustained by Plaintiff and the Class is the payment of

supracompetitive prices for TFT-LCD. This is an antitrust injury of the type that the Federal laws were meant to punish and prevent.

66.     Plaintiff and members of the Class did not discover and could not have discovered through the exercise of reasonable diligence the existence of the conspiracy alleged herein until December 11, 2006, when it was first publicly reported that manufacturers of TFT-LCDs were under investigation by antitrust authorities in the United States, Europe, Japan, and South Korea for conspiring to fix prices of TFT-LCDs.

67.     Because Defendants' agreements, understandings, and conspiracies were kept secret until December 11, 2006, Plaintiff and members of the Class were unaware of Defendants' unlawful conduct alleged herein before that date, and they did not know that they were paying artificially high prices for TFT-LCDs throughout the United States during the Class period.

68.     The affirmative acts of the Defendants alleged herein, including acts in furtherance of the conspiracy, were wrongfully concealed and carried out in a manner that precluded detection.

69.     By their very nature, Defendants' price fixing conspiracy was inherently self-concealing. The TFT-LCD industry is not exempt from antitrust regulation, and thus, before December 11, 2006, Plaintiff reasonably considered it to be a well-regulated competitive industry.

70.     In the context of the circumstances surrounding Defendants' pricing practices, Defendants' acts of concealment were more than sufficient to preclude suspicion by a reasonable person that Defendants' pricing was conspiratorial. Accordingly, a reasonable person under the circumstances would not have been alerted to investigate the legitimacy of Defendants' prices

before December 11, 2006.

71. Plaintiff and members of the Class could not have discovered the alleged contract, conspiracy, or combination at an earlier date by the exercise of reasonable diligence because of the deceptive practices and techniques of secrecy employed by the Defendants and their co-conspirators to avoid detection of, and fraudulently conceal, their contract, combination or conspiracy.

72. Because the alleged conspiracy was both self-concealing and affirmatively concealed by Defendants and their co-conspirators, Plaintiff and members of the Class had no knowledge of the alleged conspiracy, or of any facts or information that would have caused a reasonably diligent person to investigate whether a conspiracy existed, until December 11, 2006, when reports of the investigations into price fixing in the TFT-LCD industry were first publicly disseminated.

73. None of the facts or information available to Plaintiff and members of the Class prior to December 11, 2006, if investigated with reasonable diligence, could or would have led to the discovery of the conspiracy alleged herein prior to December 11, 2006.

74. As a result of Defendants' fraudulent concealment of their conspiracy, the running of any statute of limitations has been tolled with respect to any claims that Plaintiff and members of the Class have as a result of the anticompetitive conduct alleged in this Complaint.

### COUNT I
### VIOLATION OF SECTION 1 OF THE
### SHERMAN ACT AND SECTION 4 OF THE CLAYTON ACT

75. Plaintiff incorporates by reference the allegations in the above paragraphs as if fully set forth herein.

17

76. Defendants entered into and engaged in a contract, combination or conspiracy in unreasonable restraint of trade in violation of Section 1 of the Sherman Act and Section 4 of the Clayton Act.

77. The contract, combination or conspiracy has resulted in an agreement, understanding or concerted action between and among Defendants in furtherance of which Defendants instituted, fixed, maintained, raised or stabilized prices for TFT-LCD. Such contract, combination, or conspiracy constitutes a *per se* violation of the federal antitrust laws and is an unreasonable and unlawful restraint of trade.

78. Defendants' contract, combination, agreement, understanding or concerted action occurred in or affected interstate and international commerce. Defendants' unlawful conduct was through mutual understandings or agreements by, between and among Defendants.

79. The contract, combination or conspiracy has had the following effects:

   (a) Prices charged to Plaintiff and the class for TFT-LCD were raised, fixed, maintained or stabilized at higher, artificially inflated, non-competitive levels;

   (b) Plaintiff and the Class have been deprived of the benefits of free, open and unrestricted competition in the market for TFT-LCD; and

   (c) Competition in establishing the prices paid for TFT-LCD has been unlawfully restrained, suppressed and eliminated.

80. As a proximate result of Defendants' unlawful conduct, Plaintiff and the Class have suffered injury in that they have paid higher prices for TFT-LCD than they otherwise would have paid in the absence of the unlawful conduct of Defendants.

**DEMAND FOR JURY TRIAL**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a jury

18

trial as to all issues triable by a jury.

## PRAYER FOR RELIEF

WHEREFORE, the Plaintiff prays for relief as follows:

(1) That the Court determine that this action may be maintained as a class action under Rules 23(b)(2) and (b)(3) of the Federal Rules of Civil Procedure, that Plaintiff be certified as a class representative and Plaintiff's counsel be appointed as counsel for the Class;

(2) That the unlawful contract, combination or conspiracy alleged in Count I be adjudged and decreed to be an unreasonable restraint of trade or commerce in violation of Section 1 of the Sherman Act;

(3) That Plaintiff and the Class recover damages, as provided by law, determined to have been sustained as to each of them, in an amount to be trebled in accordance with the antitrust laws, and that judgment be entered against Defendants on behalf of Plaintiff and of the Class;

(4) That Defendants, their affiliates, successors, transferees, assignees, and the officers, directors, partners, agents and employees thereof; and all other persons acting or claiming to act on their behalf, be permanently enjoined and restrained from, in any manner, continuing, maintaining or renewing the contract, combination or conspiracy alleged herein, or from engaging in any other contract, combination or conspiracy having a similar purpose or effect, and from adopting or following any practice, plan or device having a similar purpose or effect;

(5) That Plaintiff and the Class recover treble damages, as provided by law;

(6) That Plaintiff and the Class recover their costs of the suit, including attorneys' fees, as provided by law; and

(7)     For such other and further relief as is just under the circumstances.

Date: January 18, 2007

s/Mindee J. Reuben
Steven A. Asher
Robert S. Kitchenoff
Mindee J. Reuben
Noah Axler
**WEINSTEIN KITCHENOFF & ASHER LLC**
1845 Walnut Street
Suite 1100
Philadelphia, PA 19103
Telephone: (215) 545 -7200
Facsimile: (215) 545 - 6535
asher@wka-law.com
reuben@wka-law.com

Donald L. Perelman
Roberta D. Liebenberg
**FINE, KAPLAN & BLACK, R.P.C.**
1835 Market Street, 28th Floor
Philadelphia, PA 19103
Telephone: (215) 567-6565
Facsimile: (215) 568-5872
dperelman@finekaplan.com
rliebenberg@finekaplan.com

Joseph Goldberg
**FREEDMAN BOYD DANIELS HOLLANDER GOLDBERG & IVES P.A.**
20 First Plaza, Suite 700
Albuquerque, NM 87102
Telephone: (505) 842-9960
Facsimile: (595) 842-0761
jg@fbdlaw.com

Warren Rubin
Law Offices of Bernard M. Gross, P.C.
Suite 450, John Wanamaker Building
Juniper and Market Streets
Philadelphia, PA 19107
Telephone: (215) 561-3600
Facsimile: (215) 561-3000
warren@bernardmgross.com